

ENTERED
01/06/2021

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| IN RE: § | | |
| RGV SMILES BY ROCKY L. SALINAS § | CASE NO: 20-70209 | |
| D.D.S. P.A., *et al* § | | |
| § | | |
| ROCKY LAMAR SALINAS, D.D.S.; dba § | CASE NO: 20-70210 | |
| RGV SMILES BY ROCKY L. SALINAS § | | |
| D.D.S. P.A.; aka COMPASSIONATE § | | |
| HEALTHCARE SERVICES § | | |
| § Jointly Administered Order | | |
| **Debtors** § | | |
| § CHAPTER 11 | | |

## MEMORANDUM OPINION

This case pits the policies underlying the Bankruptcy Code against one another. The Code is designed to shield debtors from creditors and to protect the public from debtor conduct that impacts public health, safety, and welfare. While those policies are not always in tension, here, the Court must decide how to balance those policies. On December 22, 2020, the Court conducted a final hearing on the State of Texas's expedited motion to determine the non-applicability of the automatic stay. For the reasons set forth below, this Court finds that the motion should be granted in part.

### I. Procedural History

1. In 2014, the State of Texas commenced an action under the Texas Medicaid Fraud Prevention Act ("*TMFPA*") pursuant to Texas Human Resources Code §§ 36.001–.132, styled *State of Texas v. Dr. Behzad Nazari, D.D.S. d/b/a Antoine Dental Center, et al.*, Cause No. D-1-GN-14-005380, in the District Court of Travis County, Texas, 53rd Judicial District ("*State Court Action*").[1] Both RGV Smiles by Rocky L. Salinas, D.D.S. P.A. ("*RGV Smiles*") and Rocky Lamar Salinas ("*Dr. Salinas*" and together with RGV Smiles, "*Debtors*") were named defendants in the action.[2]

2. On June 30, 2020, both RGV Smiles and Dr. Salinas filed their initial petitions and

---
[1] ECF No. 85, Ex. 1.
[2] *Id.*

schedules under chapter 11, title 11 of the United States Code.[3]

3. On July 1, 2020, Debtors each filed a Suggestion of Bankruptcy in the State Court Action.[4]

4. On July 20, 2020, this Court entered its order granting joint administration of the two bankruptcy proceedings.[5]

5. On October 13, 2020, the State of Texas filed the instant "State of Texas' Expedited Motion to Determine Nonapplicability of the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4) ("*Motion to Determine*" or "*Motion*").[6]

6. On October 19, 2020, Debtors filed their objection to the Motion to Determine.[7]

7. On October 21, 2020, the Court conducted a preliminary hearing on the Motion to Determine and continued the matter to November 18, 2020, for a final hearing and ordered briefing by November 11, 2020.[8]

8. On October 28, 2020, the State of Texas filed an adversary complaint against Debtors pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(7) and 1141(d)(6)(A).[9] On the same date, the State of Texas filed a proof of claim in the amount of $15,000,000.[10]

9. On November 10, 2020, and at the parties' request, the Court held a status conference. The parties announced that they would like to proceed to nonbinding mediation.[11] A hearing on the Motion to Determine was reset to December 22, 2020, and the briefing deadlines were extended to December 15, 2020.[12]

10. On November 18, 2020, the parties filed a joint motion to mediate.[13] This Court granted the motion and appointed the Honorable Leif M. Clark as mediator.[14]

11. On December 10, 2020, Debtors filed an objection to the State of Texas's proof of claim.[15]

---

[3] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C. "Bankr. ECF" refers docket entries made in the Debtors' jointly administered bankruptcy case, No. 20-70209.
[4] ECF No. 85, Exs. 2–3.
[5] ECF No. 29.
[6] ECF No. 85.
[7] ECF No. 97.
[8] October 21, 2020 Min. Entry.
[9] 20-7005, ECF No. 1.
[10] Claim No. 15.
[11] November 10, 2020 Min. Entry.
[12] *Id.*
[13] ECF No. 122.
[14] ECF No. 123.
[15] ECF No. 141.

12. On December 22, 2020, the Court held a status conference wherein the parties announced that the mediation resulted in an impasse.[16] On this same date, the Court conditionally approved the Amended Disclosure statement and took the Motion to Determine under advisement.[17]

## II. Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[18] This court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (G), this proceeding contains only core matters.

This Court may only hear a case in which venue is proper.[19] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Both RGV Smiles primary place of business and Dr. Salinas's principal residence are in McAllen, Texas. Their jointly administered chapter 11 cases are presently pending in this Court. Therefore, venue of this proceeding is proper.

## III. Constitutional Authority to Enter a Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order.[20] In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the

---

[16] December 22, 2020 Min. Entry.
[17] *Id.*
[18] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[19] 28 U.S.C. § 1408.
[20] *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that parties may consent to jurisdiction on non-core matters).

process of ruling on a creditor's proof of claim."[21] As indicated above, the pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). The ruling in *Stern* was limited to the one specific type of core proceeding involved in that dispute, which is not implicated here. Additionally, in *Stern,* the debtor filed a counterclaim based solely on state law. Here, the State of Texas's Motion is based on 11 U.S.C. § 362(b)(4) of the United States Bankruptcy Code. A similar provision does not exist under state law. Accordingly, the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[22]

### IV. Analysis

In its Motion to Determine, the State of Texas asks this Court to enter an order confirming that: (1) the State Court Action is excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(4); and (2) the State of Texas is authorized to continue the prosecution of the State Court Action in all respects.[23] The State of Texas acknowledges that "the provisions of Bankruptcy Code section 362(a) generally operate as a stay of, among other things, the commencement or continuation of an action or proceeding against a debtor to recover a claim that arose prior to bankruptcy."[24] However, it argues, "the TMFPA action brought by the State is an enforcement action, and thus the police and regulatory exception found in 11 U.S.C. § 362(b)(4) applies to except the State Court Action from the automatic stay, which allows a state trial court to hear a police or regulatory matter pending before it."[25] The Court will consider each argument

---

[21] 564 U.S. at 503.
[22] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547–48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also Tanguy v. West (In re Davis)*, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' . . . . We decline to extend *Stern's* limited holding herein.") (citing *Stern*, 564 U.S. at 475, 503).
[23] ECF No. 85 at 4, ¶ 7.
[24] ECF No. 85 at 3, ¶ 2.
[25] *Id.*

in turn.

### 1. Whether the police and regulatory exception of 11 U.S.C. § 362(b)(4) applies.

Upon the filing of a bankruptcy petition, 11 U.S.C. § 362(a) stays all judicial and administrative proceedings and collection efforts against a debtor and the debtor's estate. The automatic stay is intended to "protect debtors and creditors during the pendency of a bankruptcy proceeding to ensure that debtors get appropriate relief and that creditors receive payment in a fair and orderly manner."[26] Subsection (b) "establishes certain exceptions to the automatic stay provisions."[27] Under those exceptions, § 362 does not operate as a stay.[28]

Pursuant to § 362(b)(4), the subsection at issue in this case:

> the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[,]

is excepted from the automatic stay.[29] This exception helps balance the policy underlying the automatic stay by "ensur[ing] that debtors do not use a declaration of bankruptcy to avoid the consequences of their actions that threaten the public interest."[30] For § 362(b)(4) to apply, the Court must determine that the entity invoking the exception is a governmental unit pursuant to § 101(27).[31] If it is, then the Court must find that the entity is seeking to enforce its police or regulatory power.[32]

### a. Governmental Unit

---

[26] *Halo Wireless, Inc. v. Alenco Communs. Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581, 588 (5th Cir. 2012) (citing *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1182 (5th Cir. 1986)).
[27] *SEC v. First Financial Group*, 645 F.2d 429, 437 (5th Cir. Unit A May 1981).
[28] *Id.*
[29] 11 U.S.C. § 362(b)(4).
[30] *In re Halo Wireless, Inc.*, 684 F.3d at 588 (citing *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) ("[T]he purpose of this exception is to prevent a debtor from 'frustrating necessary governmental functions by seeking refuge in bankruptcy court.'")).
[31] *See* 11 U.S.C. § 362(b)(4); *see also Diaz v. Texas (In re Gandy)*, 327 B.R. 796, 802 (Bankr. S.D. Tex. 2005).
[32] See footnote 31 *supra*.

The Bankruptcy Code defines "governmental unit" as "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title) . . . ."[33] It is undisputed that the State of Texas falls squarely within that definition. The Court now turns to whether the State Court Action is an act by the State of Texas to enforce its police or regulatory power.

### b. Exercise of Police or Regulatory Power

Courts employ two separate, but related tests in determining whether a governmental unit is enforcing its police or regulatory powers: the pecuniary interest test and the public policy test.[34] Courts consider the totality of the circumstances when applying both tests.[35] If a court finds that the governmental unit's actions are aimed at protecting a pecuniary governmental interest or adjudicating private rights, as opposed to protecting public safety and health or effectuating public policy, then § 362(b)(4) does not apply, and the automatic stay is effective and remains in place.[36] If the inverse is true, then the exception applies.[37]

### i. The Pecuniary Interest Test

This Court must decide whether the State of Texas is attempting to recover from Debtors' property based on its own claim or the nongovernmental debts of private parties[38] to gain a pecuniary advantage over other creditors of Debtors.[39] Where a governmental unit acts primarily to further its financial interests, and not primarily to protect public health and safety, that action satisfies the pecuniary interest test and the automatic stay applies. Courts generally find that the

---

[33] 11 U.S.C. § 101(27).
[34] *In re Halo Wireless, Inc.*, 684 F.3d at 588.
[35] *Id.*
[36] *Id.* (citing *In re Nortel Networks, Inc.*, 669 F.3d 128, 139–40 (3d Cir. 2011)).
[37] *Id.*
[38] *Id.* (citing *McMullen v. Sevigny (In re McMullen)*, 386 F.3d 320, 325 (1st Cir. 2004)).
[39] *See id.* (citing *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 389 (6th Cir. 2001)).

§ 362(b)(4) exception is not applicable where the governmental unit's action stems from "a debt arising from normal commercial transaction[s] to purchase goods or services, or an action to collect taxes."[40] But, these are not the only situations where a court may find a governmental unit is primarily acting to further its pecuniary interest.

Debtors argue that the automatic stay should apply here because the State of Texas is acting to advance a pecuniary interest where "the State's sole focus is on reimbursement of funds tendered under the Texas Medicaid Program."[41] Debtors also assert that because Debtors are no longer providers under the Texas Medicaid Program, there is no risk of recurrent violations or ongoing malfeasance that the State has accused Debtors of committing.[42] Thus, Debtors conclude, where there is no need for an injunction to prevent future abuses, the State's only interest—reimbursement of funds—is a pecuniary one.[43]

Citing *United States v. LTV Steel Co., Inc.*, 269 B.R. 576 (W.D. Pa. 2001), the State of Texas argues that it, just like the governmental unit in *LTV Steel*, is seeking civil penalties in the State Court Action as a deterrent to future violations of the relevant state law.[44] The State asserts that here, "the civil penalties under the TMFPA sought by the State serve as an important deterrent to any future Medicaid fraud by Medicaid providers other than the Debtors."[45] Therefore, it concludes, despite Debtors no longer being Medicaid providers, "the deterrent effect of civil penalties as to future conduct of *other* Medicaid providers" is in no way diminished[46] and this action is not outside the realm of the State's police or regulatory powers.[47]

---

[40] *In re Gandy*, 327 B.R. at 804.
[41] ECF No. 149 at 8.
[42] *Id.*
[43] *Id.* at 7–8.
[44] ECF No. 147 at 7–9.
[45] *Id.* at 8–9.
[46] *Id.* at 9.
[47] *Id.* at 7.

Often, a governmental unit's enforcement of its police or regulatory powers has a pecuniary element to it.[48] What matters, however, is whether that pecuniary interest is the primary driver behind the unit's action or whether the focus is on public safety and health. Considering the totality of the circumstances in this case, the Court finds that the State is not acting primarily to further its pecuniary interest.

The TMFPA is an enforcement action intended to ensure the integrity of the Texas Medicaid Program.[49] As a government program with limited resources, enforcement is particularly important to remedy and prevent the fraud, abuse, and waste that diverts funds that could otherwise be used to provide essential health-care services to the residents of the State of Texas.[50] The Texas Medicaid Program is also concerned with the health and safety of Medicaid patients, which is put in jeopardy when services are provided improperly or unnecessarily.[51] The TMFPA factors those health-and-safety impacts, along with the seriousness of the offense and the need for effective deterrence, into assessed penalties.[52] An action pursuant to the TMFPA, then, is objectively primarily intended as an enforcement action to protect health and safety.[53]

Moreover, the Texas Supreme Court has held that the monies sought and assessed under a TMFPA suit are not damages.[54] Rather, they are steep penalties intended to prevent and deter future fraud and punish wrongdoers.[55] This Court need not decide, however, whether the remedies provided by the Texas Human Resources Code section 36.052 are damages or penalties because even if damages, they are "ancillary to the governmental unit's enforcement of its police

---

[48] *New Mexico ex rel. Balderas v. Bloomfield Nursing Operations, LLC (In re Bloomfield Nursing Operations, LLC)*, 609 B.R. 185, 192 (N.D. Tex. 2019) (quoting *In re First Alliance Mortg. Co.*, 263 B.R. 99, 109–10 (9th Cir. BAP 2001)).
[49] *In re Xerox Corp.*, 555 S.W.3d 518, 525 (Tex. 2018).
[50] *Id.* at 524.
[51] *Id.*
[52] *Id.* at 525–26; *see also* TEX. HUM. RES. CODE § 36.052.
[53] *See Nazari v. State*, 561 S.W.3d 495, 509 (Tex. 2018) ("Penalties serve a law-enforcement function . . . .").
[54] *In re Xerox Corp.*, 555 S.W.3d at 526–27.
[55] *Id.* at 526–31.

and regulatory power" and thus, "the action itself is not stayed."[56]

While it may be true that there is no risk of continued allegedly fraudulent behavior by Debtors under the Texas Medicaid Program or that the State of Texas is seeking reimbursement of program funds paid to Debtors, those facts do not make the State Court Action any less of a government enforcement action. First, § 362(b)(4) does not require a showing of "imminent and identifiable harm or urgent public necessity" for a court to find that the exception applies.[57] The TMFPA seeks to protect the integrity of the Texas Medicaid program through deterrence.[58] Monetary penalties assessed in a successful TMFPA suit increase the cost of abusing the Texas Medicaid Program, acting as a deterrent to future violative conduct.[59] A successful action against Debtors, regardless of their current status as Medicaid providers, indicates to existing providers that the State of Texas will investigate and punish abuse of the program. TMFPA suits are one of the State's mechanisms to enforce compliance with the Texas Medicaid Program.[60]

Additionally, the legislative history of § 362(b)(4) further supports the Court's finding:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protections, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such law*, the action or proceeding is not stayed under the automatic stay.[61]

---

[56] *In re Gandy*, 327 B.R. at 804 (citing *Brennan*, 230 F.3d at 71–73). It is important to note that a collection effort once a money judgment has been awarded would be stayed pursuant to § 362(b)(4) because collection of a money judgment is an exception to the exception; however, because no judgment has been entered as of yet in the State Court Action, a collection effort is not at issue in this case.
[57] *In re Commonwealth Oil Refining Co.*, 805 F.2d at 1184.
[58] *See In re Xerox Corp.*, 555 S.W.3d at 525.
[59] *See Brennan*, 230 F.3d at 72–73 (finding that "[w]hen the government seeks to impose financial liability on a party, it is plainly acting in its police or regulatory capacity--it is attempting to curb certain behavior . . . by making the behavior that much more expensive. It is this added expense that deters a party from defrauding or polluting--not the identity of the entity which it must eventually pay. Accordingly, up to the moment when liability is definitively fixed by entry of judgment, the government is acting in its police or regulatory capacity—in the public interest, it is burdening certain conduct so as to deter it.").
[60] *See In re Xerox Corp.*, 555 S.W.3d at 539 ("The [Texas Medicaid Fraud Prevention] Act adopts a civil-penalty scheme to deter, punish, and thereby prevent fraud on the Medicaid system.").
[61] H.R. REP. NO. 95-595, at 343, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6299 (emphasis added).

The Texas Medicaid Fraud Prevention Act is what the title implies, an act to prevent fraud.[62] Fraud prevention is explicitly mentioned in the legislative history of § 362(b)(4), along with "attempting to fix damages for violation of such law."[63] Therefore, it is insignificant that the State seeks reimbursement of Medicaid Program funds; the State Court Action is a suit to prevent fraud (even if it's future fraud by other providers) and affix damages for violation of the State's Medicaid Program. Lastly, because § 362(b)(4) prohibits the State from enforcing any money judgment it is awarded in the State Court Action,[64] that claim must be pursued in Debtors' pending bankruptcy action, ensuring the State will not receive a benefit over other creditors in litigating the State Court Action.[65] Accordingly, this Court finds that the State of Texas is not acting in its pecuniary interest in pursuing the State Court Action.

   ii. **The Public Policy Test**

This Court must also assess whether the State Court Action meets the public policy test. Under that test, courts consider "whether the government is effectuating public policy rather than adjudicating private rights."[66] This test, like the pecuniary interest test, considers the totality of the circumstances. If the State is acting to effectuate public policy, then the § 362(b)(4) exception applies.

As recognized by the Texas Supreme Court, the TMFPA is similar to the federal False

---

[62] *See also In re Xerox Corp.*, 555 S.W.3d at 539 ("The [Texas Medicaid Fraud Prevention] Act adopts a civil-penalty scheme to deter, punish, and thereby prevent fraud on the Medicaid system.").
[63] H.R. Rep. No. 95-595.
[64] 11 U.S.C. § 362(b)(4) (". . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment *other than a money judgment*, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.") (emphasis added).
[65] *See Chao v. Mike & Charlie's, Inc.*, 2006 U.S. Dist. LEXIS 2178, at *8 (S.D. Tex. Jan. 4, 2006); *see also Eddleman v. United States Dep't of Labor*, 923 F.2d 782, 791 (10th Cir. 1991) (finding that the Department of Labor's proceeding for debarment and liquidation of back-pay claims for specific individuals was excepted from the automatic stay pursuant to § 362(b)(4) and that the court's conclusion was "bolstered by the fact that the back-pay claimants would not receive any extra priority by virtue of the DOL action. Actual collection of the back-pay claims must proceed according to normal bankruptcy procedures.").
[66] *In re Halo Wireless, Inc.*, 684 F.3d at 588 (quoting *In re Nortel Networks, Inc.*, 669 F.3d at 140).

Claims Act ("*FCA*") because it is a "powerful tool" used "for targeting fraud against the Texas Medicaid program."[67] Several courts have recognized that the FCA and analogous state laws satisfy the public policy test because such laws are designed to prevent or stop fraud and affix damages for past fraud.[68] The TMFPA is no different.

In litigating the State Court Action, the State of Texas is in no way adjudicating private rights.[69] While the Texas Medicaid program benefits individuals, it is a publicly funded program intended to provide "adequate and high quality health care . . . to all children and adults who need the care and are not financially able to pay for it."[70] The TMFPA does not specify, nor does this Court need to determine, how monies recovered in TMFPA suits are allocated,[71] but that money belongs to the government, not private individuals;[72] thereby moving the needle more toward a finding that the State is acting for public policy reasons. Even in cases where private persons stand to gain monetarily based on a government's successful suit, courts have found that the government was acting for public policy reasons when the behavior targeted threatened public health, safety, or welfare.[73]

---

[67] *In re Xerox Corp.*, 555 S.W.3d at 525.
[68] *See, e.g.*, *In re Bloomfield Nursing Operations, LLC*, 609 B.R. at 193 (finding that New Mexico's Medicaid Fraud Act "falls plainly within 11 U.S.C. § 362(b)(4)'s stated purpose"); *In re Commonwealth Cos., Inc.*, 913 F.2d 518, 525 (8th Cir. 1990) (finding that "a governmental action attempting to fix damages for violation of the FCA comes within § 362(b)(4)."); *United States ex rel. Fullington v. Parkway Hosp. Inc.*, 351 B.R. 280, 288–90 (E.D.N.Y. 2006) ("Although it is undeniable that the FCA has, as one of its purposes, the objective of providing restitution for the government . . . it is well-settled that the statutory scheme . . . also has the distinct public policy purpose of punishing and deterring fraud . . . ."); *United States ex rel. Doe v. X, Inc.*, 246 B.R. 817, 818–20 (E.D. Va. 2000) (". . . laws, such as the False Claims Act, that are designed to prevent or stop fraud, or to fix damages for fraud already committed, are police or regulatory laws.").
[69] In the State of Texas's Motion to Determine, it argues that *qui tam* actions are excepted from the automatic stay. The Court need not address this issue because there is no evidence in the record that the State Court Action was originally brought by a relator. The State Court Action reflects that the State itself has always been the plaintiff. See ECF No. 85, Ex. 1.
[70] TEX. HUM. RES. CODE § 32.002.
[71] *Id.* § 36.008.
[72] *See Civil Medicaid Fraud*, OFFICE OF THE ATTORNEY GENERAL (Dec. 31, 2020, 3:01 PM), texasattorneygeneral.gov/*divisions*/civil-medicaid-fraud ("The Civil Medicaid Fraud Division investigates allegations of unlawful cats against the Medicaid program to prosecute meritorious claims and recover taxpayer dollars.").
[73] *See, e.g.*, *NLRB v. Evans Plumbing Co.*, 639 F.2d 291, 293 (5th Cir. Unit B Mar. 1981) (finding that a proceeding based on unfair labor practice seeking reinstatement with back pay was not subject to automatic stay pursuant to

Accordingly, the State Court Action is intended to effectuate a public policy—ensuring the integrity of the Texas Medicaid Program by preventing fraud so the State can ensure financially vulnerable residents have access to essential health care services—not adjudicating private rights. Thus, the Court finds that the State Court Action is excepted from the automatic stay pursuant to § 362(b)(4).

### 3. Whether the State of Texas's filing of a proof of claim amounts to consent of this Court's jurisdiction over the State Court Action.

The State of Texas filed a proof of claim in Debtors' underlying bankruptcy case in the amount of $15,000,000.[74] Debtors filed an objection to that proof of claim[75] and argue in their objection that by filing such a claim and an adversary proceeding related to that claim, the State has participated in Debtors' bankruptcy case, thereby "recogniz[ing] that this Court is a proper venue to decide [the issues pled in the State Court Action] as they relate to the Debtors' bankruptcy cases."[76]

Debtors are correct that the filing of a proof of claim in a bankruptcy case subjects a creditor to a bankruptcy court's equitable power.[77] However, 28 U.S.C. § 1452(a) provisions, "[a] party may remove any claim or cause of action in a civil action other than . . . a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." This Court has already determined that the police and regulatory exception to the automatic stay applies be-

---

§ 362(b)(4)); *Chao*, 2006 U.S. Dist. LEXIS 2178, at *7–8 (finding that the government satisfied the public policy test where it was seeking to enforce the Fair Labor Standards Act); *Eddleman*, 923 F.2d at 791 (finding that the governmental unit's seeking liquidation of back-pay claims for specific individuals was not a remedy for asserting private rights, but rather a remedy aimed at enforcing the policies underlying the Service Contract Act and thus, satisfied the public policy test).
[74] Claim No. 15.
[75] ECF No. 141.
[76] ECF No. 149.
[77] *Langenkamp v. Culp*, 498 U.S. 42, 44–45 (1990) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 58–59, 59 n.14 (1989)) ("In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power.").

cause in bringing the State Court Action, the State of Texas is enforcing its police or regulatory power. As a result, despite any consent to this Court's jurisdiction, the State Court Action, as it pertains to Debtors, is not removable to this Court under § 1452(a).[78] Debtors supplied no other basis on which this Court may entertain the claims brought by the State of Texas in the State Court Action.

### 4. Whether Debtors' request for injunctive relief may be granted.

Federal Rule of Bankruptcy Procedure 7001(7) labels "a proceeding to obtain an injunction or other equitable relief" as an adversary proceeding. Rule 7003, which incorporates Federal Rule of Civil Procedure 3, says that "[a] civil action is commenced by filing a complaint with the court." Adversary proceedings also require service.[79]

Debtors urge this Court to enjoin the State from pursuing the State Court action pursuant to 11 U.S.C. § 105, in the event this Court finds it appropriate to lift the automatic stay.[80] The State of Texas argues that Debtors have not followed the proper procedural process for imposition of injunctive relief.[81] The State maintains that Debtors must file an adversary proceeding pursuant to Rule 7001(7), separate from their objection to the State's Motion, if they have any hope of receiving the injunction requested.[82] Debtors respond that "[a]utority exists for this Court to rule on the Debtors' objection to the State's Motion, as a contested matter pursuant to Rule 9014."[83] To support that proposition, Debtors cite only one source from the District Court of Massachusetts, holding that: "the request for monetary damages and injunctive relief are cov-

---

[78] *See* 28 U.S.C. § 1452(a); *see also Texas v. Briseno (In re Briseno)*, 571 B.R. 214, 222 (Bankr. S.D. Tex. 2017) (finding that the government was entitled to the exception to removal found in § 1452(a) because it was exercising its police or regulatory power).
[79] FED. R. BANKR. P. 7004; *see also Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 763 (5th Cir. 1995) (citing *Village Mobile Homes, Inc. v. First Gibraltar Bank (In re Village Mobile Homes, Inc.)*, 947 F.2d 1282, 1283 (5th Cir. 1991)).
[80] ECF No. 97 at 12–13.
[81] ECF No. 147 at 4.
[82] *Id.*
[83] ECF No. 149 at 13.

ered by Rule 7001 and should have proceeded as an adversarial hearing" but "[t]he bankruptcy court's decision to proceed as a contested matter, however, was not prejudicial to Appellants, and therefore was harmless error."[84] The *Ralls* case, however, supports the State's contention by holding that seeking injunctive relief through means other than an adversary proceeding was erroneous, even if harmless. Why would this Court entertain Debtors' request for injunctive relief by way of their objection to the State's Motion, when case law, albeit not binding, calls doing so an error?

Rule 7001(7) is controlling and requires the filing of an adversary proceeding for this Court to consider injunctive relief. In *In re Zale Corporation*, the Fifth Circuit found that "[i]ncluding a matter governed by Rule 7001 in another matter already before the court . . . does not satisfy the procedural rules required by Rule 7001."[85] This Court will not entertain a request for injunctive relief in a contested matter, as Debtors urge it should, because contested matters, as opposed to adversary proceedings, "require fewer procedural protections"[86] and "are generally designed for the adjudication of simple issues."[87] In the interest of due process, all affected parties must be apprised of and have a chance to answer allegations against them and plead any applicable affirmative defenses.[88] This Court will not entertain a request for injunctive relief that rides in under the cover of darkness on the back of a contested matter where Rule 7001 requires an adversary proceeding.

---

[84] *Ralls v. Docktor Pet Ctrs.*, 177 B.R. 420, 428 (D. Mass. 1995).
[85] 62 F.3d at 763. This Court notes that the version of Rule 7001 considered in *In re Zale Corporation* was amended in 1999 to "recognize that an adversary proceeding is not necessary to obtain injunctive or other equitable relief that is provided for in a plan . . . ." Rule 7001 Notes of Advisory Committee on 1999 amendments. That change has no bearing on the applicability of *In re Zale Corporation* to this case because the injunctive relief requested here is not included in the plan, and thus, Rule 7001(7) is applicable.
[86] *Id.* at 762.
[87] *In re Transamerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992) (citations omitted).
[88] *See Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 440 (5th Cir. 1994) (holding that a party may waive its right to an adversary proceeding, but that "courts should not find waiver of the procedural protections required in adversary proceedings unless the parties are apprised of and have a chance to address all the issues being decided.").

### V. Conclusion

The State of Texas' Expedited Motion to Determine Nonapplicability of the Automatic Stay Pursuant to 11 U.S.C. § 362(b)(4) is granted in part. The claims and causes of action brought by the State of Texas in the lawsuit styled *State of Texas v. Dr. Behzad Nazari, D.D.S. d/b/a Antoine Dental Center, et al.*, Cause No. D-1-GN-14-005380, in the District Court of Travis County, Texas, 53rd Judicial District ("*State Court Action*") are excepted from the automatic stay as to RGV Smiles by Rocky L. Salinas, D.D.S, P.A. and Rocky Lamar Salinas pursuant to 11 U.S.C. § 362(b)(4). The State of Texas is authorized to take all actions necessary to prosecute and liquidate the claims and causes of action brought by the State of Texas in the State Court Action as to RGV Smiles by Rocky L. Salinas, D.D.S, PA and Rocky Lamar Salinas, however, and pursuant to 11 U.S.C. § 362(a), the State of Texas is precluded from taking any action to collect any judgment entered in the State Court Action against RGV Smiles by Rocky L. Salinas, D.D.S, P.A. and Rocky Lamar Salinas outside of the above-styled and numbered chapter 11 bankruptcy case, unless such chapter 11 case is closed or dismissed. The automatic stay under 11 U.S.C. § 362(a) does not apply to any non-debtor defendants in the State Court Action.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 01/06/2021.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge